Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JUAN C. RUAÑO MUÑOZ **Apelado** V. EL MONTE TOWN CENTER, LLC. **Apelante** | KLAN202400779 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Civil. Núm. K AC2016-0209 Sobre: Incumplimiento de Contrato |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

**Hernández Sánchez, Juez Ponente.**

### SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2024.

El 19 de agosto de 2024, el Monte Town Center LLC y el Monte Tower LLC (Compañías o parte apelante) comparecieron ante nos mediante un recurso de *Apelación* y solicitaron la revisión de una *Sentencia Parcial* que se emitió el 21 de junio de 2024 y se notificó el 24 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI acogió la *Resolución del Comisionado Especial.* Consecuentemente, resolvió que los pagarés no eran transferibles, que el apelado no transfirió sus acreencias y que la capitalización de la deuda era nula.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 29 de marzo de 2016, el Sr. Juan C. Ruaño Muñoz (señor Rauño Muñoz o apelado) presentó una *Demanda* en cobro de dinero e incumplimiento de contrato en contra

de la parte apelante.[1] Alegó que era tenedor de un pagaré emitido por El Monte Tower LLC, que se expidió el 8 de julio de 2013, por la suma de $204,756.00 y con fecha de vencimiento de 1 de enero de 2041. Asimismo, arguyó que era tenedor de otro pagaré que se expidió el 8 de julio de 2013, por la suma de $142,288.00 emitido por El Monte Town Center y con fecha de vencimiento de 1 de enero de 2041. Sostuvo que las partes se obligaron a pagar las sumas adeudadas a partir de 1 enero de 2016, mediante 300 plazos mensuales iguales y consecutivos de principal e intereses a razón de 8% anual. A su vez, acordaron que en caso de incumplimiento la parte apelante se comprometía a pagar la suma equivalente al 10% del principal de la obligación.

Esbozó que comenzó a solicitar el pago de las sumas adeudadas, sin embargo, la parte apelante se negó a honrar el pago de las acreencias. Enfatizó que, en varias ocasiones, reiteró su reclamo con relación al pago de las obligaciones acordadas, pero que dichas gestiones fueron infructuosas. Por todo lo anterior, solicitó el cumplimiento específico de los contratos, el pago de los intereses acumulados y los intereses que se acumularan a la liquidación total de la deuda, así como el 10% como pago de honorarios legales. En la alternativa, solicitó la resolución del contrato, la devolución de las prestaciones y daños y perjuicios.

En respuesta, el 9 de junio de 2016, la parte apelante presentó su *Contestación a la Demanda y Reconvención* en la cual negó la mayoría de las alegaciones.[2] Como defensas afirmativas, arguyó que el señor Ruaño Muñoz era inversionista de las Compañías y que la transferencia que realizó sobre su participación al fideicomiso Rule Caribbean Investment, Inc.[3] (Rule Caribbean o fideicomiso) no

---

[1] Véase, págs. 768-783 del apéndice del recurso.
[2] Íd., págs. 729-767.
[3] El 10 de mayo de 2016, la parte apelante presentó una *Demanda Contra Tercero* a los fines de incluir en el pleito al fideicomiso Rule Caribbean, ya que sus derechos podían verse afectados. En específico, planteó que el señor Ruaño

cumplió con el procedimiento establecido en los *Acuerdos Operacionales* de las Compañías. Por otra parte, indicó que la deuda que reclamaba el apelado era inexistente, ya que los pagarés objeto de la controversia fueron capitalizados mediante un acto corporativo válido. Por último, esgrimió que el apelado no tenía derecho a solicitar la resolución del contrato. En la alternativa, señaló que el señor Ruaño Muñoz no tenía derecho a solicitar la aceleración del pago de la deuda, toda vez que no hubo un pacto al respecto.

De otra parte, en su *Reconvención* alegó que las Compañías se dedicaban a la adquisición de propiedades inmuebles. Argumentó que, como parte de su organización, suscribieron unos *Acuerdos Operacionales* para regir asuntos internos de las Compañías. Señaló, que el señor Ruaño Muñoz era miembro de dichas Compañías y que, para levantar el capital necesario de las Compañías, todos los miembros realizaron aportaciones de capital y otorgaron préstamos. Apuntó que, conforme a la sección 6.7 de los *Acuerdos Operacionales* los pagarés del apelado fueron convertidos a capital por lo que no podía reclamar el pago de la deuda. Por último, explicó que conforme a la sección 6.5 de los *Acuerdos Operacionales*, la transferencia o cesión del apelado a Rule Caribbean era nula.

Por todo lo anterior, solicitó se declarase Ha Lugar la *Solicitud de Sentencia Declaratoria*, en la cual se reconociera la conversión efectuada por las Compañías y que el señor Ruaño Muñoz era miembro de estas. Asimismo, solicitó la imposición de honorarios de abogado por temeridad en una suma no menor de $50,000.00. El 7 de julio de 2017, el apelado presentó su *Contestación a Reconvención*.[4]

---

Muñoz dejó de ser miembro de las Compañías cuando cedió su interés propietario a Rule Caribbean. No obstante, apuntó que dicha cesión se realizó sin cumplir con los procedimientos establecidos en los *Acuerdos Operacionales*.

[4] Íd., págs. 711-718. Además, el 28 de enero de 2018, Ruaño Muñoz presentó una *Demanda Enmendada* a los fines de que, si el TPI determinaba que el apelado era

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 24 de marzo de 2023, el señor Ruaño Muñoz y Rule Caribbean presentaron una *Solicitud de Sentencia Sumaria Parcial* y enumeraron treinta y tres (33) hechos que, a su juicio, no estaban en controversia.[5] Así pues, indicaron que, ante la inexistencia de hechos esenciales y pertinentes en el pleito lo que restaba resolver era si los pagarés eran deudas líquidas, vencidas y exigibles por la parte apelante. Reiteraron que, la transferencia de acciones al fideicomiso Rule Caribbean fue efectuada conforme a los *Acuerdos Operacionales*. Sostuvieron que, desde el 13 de noviembre de 2013, el accionista de las Compañías era Rule Caribbean y que esta era portadora de certificados de acciones emitidos a su nombre.

Por otra parte, argumentaron que el TPI debía determinar si la parte apelante podía proceder con la capitalización de deudas con sus accionistas a escondidas del señor Ruaño Muñoz, por sí o como representante de Rule Carribbean. Ello, en violación a sus derechos propietarios como accionista. Asimismo, plantearon que procedía determinar si se podía capitalizar la deuda de las Compañías con el señor Ruaño Muñoz, a pesar de que este dejó de ser accionista.

En desacuerdo, el 15 de enero de 2024, la parte apelante presentó su *Oposición a Solicitud de Sentencia Sumaria Parcial*.[6] En esencia, desglosó los hechos que entendía que estaban en controversia y los que no. Específicamente indicó que, la *Solicitud de Sentencia Sumaria Parcial* no cumplía con la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V., R.36.3, dado que no se presentó una exposición breve de las alegaciones de las partes.

---

el accionista de las Compañías, entonces este sería acreedor de los remedios solicitados por Rule Caribbean en su *Reconvención*. En virtud de lo anterior, solicitó que se adoptase como propias las alegaciones contenidas en la *Reconvención* de Rule Caribbean y, los daños causados al compareciente en cuanto a su planificación financiera y hereditaria los cuales estimó en una suma no menor de $500,000.00.

[5] Íd., págs. 437-664.
[6] Íd., págs. 239-436.

Además, planteó que los hechos materiales que no estaban en controversia demostraban que las Compañías no adeudaban dinero al señor Ruaño Muñoz por concepto de los pagarés, ya que fueron debidamente convertidos a capital. Particularmente, adujo que los hechos en controversia eran los siguientes:

1. Nunca se le notificó a las Compañías una comunicación escrita suscrita por Rule aceptando regirse por los términos de los Acuerdos Operacionales, conforme exige expresamente la Sección 6.5 de los Acuerdos Operacionales.

2. La transferencia del interés propietario de Ruaño en las Compañías efectuada a favor Rule es nula *ab initio*, por operación de la Sección 6.6 de los Acuerdos Operacionales.

3. En vista de que la transferencia del interés propietario de Ruaño a favor de Rule es nula, Ruaño ha sido miembro de las Compañías desde la fecha de su organización de hasta el presente.

4. La conversión de la deuda capital realizada por las Compañías que vincula los pagarés objeto de controversia en el presente caso es válida a la luz de la Sección 6.7 de los Acuerdos Operacionales y del Artículo 19.18(a)(b), de la LGC, *supra*.

5. Siendo a todas luces válida la referida conversión de deuda a capital, las Compañías no adeudan suma alguna a Ruaño por concepto de los pagarés objeto del caso de epígrafe.

6. En cualquier caso, Ruaño no tiene derecho a solicitar la aceleración del pago de la totalidad de la alegada deuda, ya que en los pagarés objeto de controversia no se dispuso pacto expreso a tales efectos.

Así las cosas, el 25 de enero de 2024, Rule Caribbean y el señor Ruaño Muñoz presentaron su *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria* en la cual reiteraron sus planteamientos iniciales.[7] Por su parte, el 8 de febrero de 2024, la parte apelante presentó su *Dúplica a Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria Parcial*.[8]

---

[7] Íd., págs. 124-238.
[8] Íd., págs. 111-119.

Luego de examinar los planteamientos presentados por las partes, el 14 de marzo de 2024, el Comisionado Especial presentó su *Resolución del Comisionado Especial sobre Solicitud de Sentencia Sumaria Parcial* y, determinó que los siguientes hechos no estaban en controversia[9]:

1. Que el Demandante RUANO es mayor de edad. empresario y vecino de Guaynabo, Puerto Rico.

2. Que RULE Caribbean Investment Trust (RULE) es un Fideicomiso creado mediante la Escritura #30 "Deed of Living Trust" del 30 de diciembre de 2011 ante el Notario Eddie López Alonso, y que en dicho Fideicomiso el Grantor (Cedente) es Juan Carlos Ruaño Muñoz (RUAÑO), y que el Trustee (Fideicomisario) es Urban Acquisitions Corp., quien es una corporación organizada y existente bajo las Leyes del Estado Libre Asociado de Puerto Rico.

3. Que EMTC y EMT fueron organizadas y registradas en el Departamento de Estado de Puerto Rico el 21 de mayo de 2013 y que coetáneo con su organización, los accionistas suscribieron unos Investors Agreements y unos Acuerdos Operacionales para cada una de las corporaciones, intitulados Limited Liability Company Operating Agreements, en virtud de los cuales se adoptaron los procedimientos para regir los asuntos internos y de administración de las compañías.

4. Que RUAÑO formó parte del grupo de inversionistas que participó de la adquisición de las propiedades comerciales localizadas a los 650 y 652 de la Avenida Muñoz Rivera y quienes organizaron las dos entidades codemandadas, a saber: EMTC y EMT, y formó parte del grupo de inversionistas que adquirió una propiedad en la misma avenida, para lo cual organizaron otra corporación de responsabilidad limitada conocida como Hato Rey Partners, LLC (HRP), la cual no es parte en este litigio.

5. Que el 8 de julio de 2013 se otorgaron los Acuerdos Operacionales de las compañías EMTC y EMT y se establecieron las participaciones particulares de cada inversionista, se estableció quiénes van a constituir su Junta de Directores, y se nombraron como Directores al Lcdo. Jacobo Ortiz Murias y su hijo Lcdo. Jacobo Ortiz Blanes, y al Demandante RUANO.

---

[9] Íd., págs. 65-110.

6. Que los porcientos de participación de cada uno de los miembros en las dos corporaciones, son los mismos en ambas compañías en proporción a su respectiva inversión de capital.

7. Que en el caso de RUAÑO su participación en cada una de las compañías correspondía a un 30.5%. Este porciento es el resultado de la inversión de capital por RUAÑO de $241,288.00 en la compañía EMTC, y de $347,044.00 en la compañía EMT.

8. Que los inversionistas, como parte de sus aportaciones iniciales a las entidades, además del capital aportado, les entregaron a las corporaciones ciertas cantidades de dinero en calidad de préstamos, las cuales fueron evidenciadas mediante la emisión de los correspondientes Pagarés a favor de los miembros. En el caso de RUAÑO se emitió un Pagaré por la cantidad de $204,756.00 y otro por la cantidad de $142,288.00 correspondientes a las deudas de estas compañías con RUAÑO, por concepto de los préstamos hechos por éste a las corporaciones.

9. Que la Codemandada El Monte Town Center, LLC (EMTC) es un Limited Liability Company, constituida bajo las leyes de Puerto Rico con capacidad legal para demandar y ser demandada.

10. Que la otra Co- demandada, El Monte Tower LLC (EMT) es un Limited Liability Company, constituida bajo las leyes de Puerto Rico con capacidad legal para demandar y ser demandada.

11. Que el Demandante es el tenedor de un Pagaré expedido el 8 de julio de 2013. por la suma de $204,756.00 emitido por EMT y con fecha de vencimiento de 1ro de enero de 2041, el cual fue suscrito por el Lcdo. Jacobo Ortiz Blanes en calidad de Secretario de la Codemandada y reconocido mediante affidavit #141, de 8 de julio de 2013 por la notaria Amanda Lydia Hernández Fernández, el cual literalmente lee como sigue:

PAGARÉ

PRINCIPAL:          $204,756.00

FECHA DE VENCIMIENTO: 1 de enero de 2041

Por valor recibido, la suscribiente debe y pagará a JUAN C. RUANO MUÑOZ la suma principal de DOSCIENTOS CUATRO MIL SETECIENTOS CINCUENTA Y SEIS DOLARES ($204,756.00) la cual será pagadera comenzando el 1 de enero de 2016 en trescientos (300)

plazos mensuales, iguales y consecutivos de principal e intereses a razón del ocho por ciento (8.00%) anual.

La suscribiente se compromete a pagar una suma equivalente al 10% del principal de la obligación para gastos, costas y honorarios de abogados en caso de reclamación por la vía judicial y cuya suma será liquida y exigible con la mera radicación de la demanda

Esta obligación quedare subordinada a la primera hipoteca que constituye sobre la propiedad de 650 Plaza.

La suscribiente renuncia al derecho que tiene de notificación, demanda, protesto y aviso y se somete expresamente a la jurisdicción del Tribunal de Primera Instancia, Sala Superior de San Juan.

Este Pagaré no es negociable, ni transferible.

En Guaynabo, Puerto Rico, hoy día 8 de julio de 2013. EL MONTE TOWER, LLC

EL MONTE TOWER, LLC

Por: _____
       Jacob Ortiz Blanes
            Secretario

12. Que el Demandante también es el tenedor del Pagaré expedido el 8 de julio de 2013, por la suma de $142,288.00, emitido por la otra Codemandada EMTC y también con fecha de vencimiento de 1ro de enero de 2041, el cual fue suscrito por el Lcdo. Jacobo Ortiz Blanes en calidad de Secretario de la codemandada y reconocido mediante affidavit #185, de 8 de julio de 2013 por la Notario Amanda Lydia Hernández Fernández, el cual literalmente lee como sigue:

PAGARÉ

PRINCIPAL: $142,288.00

FECHA DE VENCIMIENTO: 1 de enero de 2041.

Por valor recibido, el suscribiente debe y pagará a JUAN C. RUAÑO MUNOZ la suma principal de CIENTO CUARENTA Y DOS MIL DOSCIENTOS OCHENTA Y OCHO DOLARES ($142,288.00), la cual será pagadera comenzando el 1 de enero de 2016 en trescientos (300) plazos mensuales, iguales y consecutivos de principal e intereses a razón del ocho por ciento (8.00%) anual.
La suscribiente se compromete a pagar una suma equivalente al 10% del principal de la obligación para gastos, costas y honorarios de abogados en caso de reclamación por la vía judicial y cuya suma será líquida y exigible con la mera radicación de la demanda.

El suscribiente renuncia al derecho que tiene de notificación, demanda, protesto y aviso y se somete expresamente a la jurisdicción del Tribunal de Primera Instancia, Sala Superior de San Juan.

Este Pagaré no es negociable, ni transferible.

En Guaynabo, Puerto Rico, hoy día 8 de julio de 2013.

EL MONTE TOWER, LLC

_____

Por: Jacobo Ortiz Blanes
Secretario

13. Que conforme a los Pagarés emitidos por las deudoras éstas se obligaron a que a partir del 1ro de enero de 2016, comenzarían a pagar las sumas adeudadas mediante 300 plazos mensuales iguales y consecutivos de principal e intereses a razón de 8% anual.

14. Que los Pagarés proveen para que en caso de incumplimiento con la obligación antes señalada respecto a cada uno de los Pagarés emitidos por cada Codemandada, éstas se comprometían a pagar al acreedor una suma equivalente al 10% del principal de la obligación para gastos, costas y honorarios de Abogado en caso de reclamación por la vía judicial y cuya suma será líquida y exigible con la mera radicación de la Demanda, y que en el Pagaré expresamente renunciaron las deudoras al derecho de notificación, demanda, protesto y aviso.

15. Que ninguno de dichos Pagarés contiene una cláusula de "aceleración".

16. Que una vez vencieron ciertos plazos de las obligaciones representadas en los Pagarés que requerían el pago de principal e intereses mensuales a partir del 1ro de enero de 2016, el Demandante requirió de las Codemandadas que procedieran a satisfacer las mensualidades convenidas.

17. Que las Codemandadas, por las razones que más adelante se indican, respondieron negándose a pagar las acreencias establecidas en los Pagarés.

18. Que, mediante su carta del 9 de octubre del 2015, firmada por el Lcdo. Jacobo Ortiz Blanes como Secretario de EMTC, se le informó a RUAÑO lo siguiente:

   a. Que como resultado de su renuncia como miembro de la Junta de Directores, se nombró al Sr. Juan C. Ortiz De La Renta para llenar la vacante.

b. b. Que se autorizó a la Junta de Directores a incurrir en una deuda adicional por una cantidad que no exceda de $10,000,000 (diez millones) en principal.

c. Que ni RUAÑO ni RULE firmaron documento alguno para posponer el pago de las obligaciones de las Codemandadas con RUANO, ni firmaron documento alguno para subordinar el cobro de los pagarés emitidos a favor de RUANO a la deuda hasta un máximo de $10,000,000 a ser incurrida con BANESCO.

19. Que en su carta del 30 de octubre de 2015 el Ledo. Jacobo Ortiz Murias, en representación de EMTC y EMT, le informó a RUAÑO lo siguiente:

a. Que excepto RUANO, todos los miembros y/o inversionistas de las Compañías aceptaron subordinar el cobro de sus respectivos pagarés al repago de la deuda recién contraída con la antedicha institución financiera (refiriéndose al refinanciamiento por $10,000,000 con BANESCO).

b. Que reconocen que ciertamente es prerrogativa de RUANO el negarse a subordinar el cobro de sus pagarés al repago de la deuda bancaria.

c. Que, aunque las Compañías en ese momento no tienen liquidez, le informa a RUAÑO que uno o algunos de los miembros de las Compañías han aceptado adquirir de RUAÑO los pagarés ya vencidos, a saber: (i) Pagaré por la suma de $60,130.20 suscrito el 12 de septiembre de 2014 y (ii) Pagaré por la suma de $15,954.76 suscrito el 12 de septiembre de 2014.

d. Que, con relación a los otros dos pagarés mencionados por RUANO en su carta, a saber: (i) Pagaré por la suma de $142,288.00 suscrito el 8 de julio de 2013 y (ii) Pagaré por la suma de $204,756.00 suscrito el 8 de julio de 2013, no era necesario hacer en ese momento expresión alguna ya que la fecha de vencimiento de los mismos no había llegado.

20. Que el 3 de marzo de 2016, las Codemandadas cursaron comunicación a la representación legal de la parte Demandante alegando que las deudas representadas por los respectivos Pagarés no eran exigibles, por cuanto el Demandante había consentido a subordinar las mismas al pago del contrato de préstamo de 19 de julio de 2013, por la suma de

$3.500.000.00 suscrito entre las Codemandadas y Banesco USA (BANESCO), para la adquisición de las propiedades de Muñoz Rivera 650 y 652, y que en esa comunicación alegaron no contar con dinero suficiente para satisfacer sus obligaciones sobre el pago correspondiente.

21. Que mediante comunicación enviada el 8 de marzo de 2016 la parte Demandante reiteró su reclamo sobre el pago de las obligaciones convenidas en los Pagarés y alegó en la referida comunicación que el referido Acuerdo de Subrogación ya no se encontraba vigente (refiriéndose al acuerdo de subrogación relacionado con la deuda por $3,500,000), por cuanto el préstamo entre las Codemandadas y BANESCO de 19 de julio de 2013, ya había sido saldado y las Codemandadas habían obtenido un nuevo préstamo de 9 de octubre de 2015, por la suma de $10,000,000 con respecto del cual el Demandante nunca suscribió acuerdo alguno de subrogación.

22. Que en dicha comunicación del 8 de marzo de 2016 el Demandante apercibió a las Codemandadas que, de no proceder con el pago de la deuda reclamada, estarían incurriendo en incumplimiento de contrato que daría derecho a la parte compareciente a instar acción judicial dando por vencidas la totalidad de las estarían incurriendo en incumplimiento de contrato que daría el derecho a la parte deudas por causa de Resolución del Contrato.

23. Que anteriormente las Codemandadas le habían pagado al Demandante otros dos Pagarés los cuales también estaban sujetos al acuerdo de subordinación, por las sumas de $60,130.20 y de $15,954.55.

24. Que las Codemandadas se negaron a pagar los Pagarés emitidos a favor de RUANO aduciendo que el 69.5% de los inversionistas de ambas entidades habían acordado convertir en capital los préstamos que cada uno de los inversionistas mantiene con las Codemandadas (emitir acciones en pago de los préstamos).

25. Que el interés de RUAÑO era el transferir sus inversiones en las corporaciones EMTC y EMT al fideicomiso RULE (en el cual los beneficiarios eran RUANO y sus hijos), como parte de un proceso de planificación contributiva y hereditaria, y que dicha transferencia era permitida por el artículo 6.1 de los Acuerdos Operacionales de tales entidades, así como de la Sección A del Investors Agreement, las cuales contienen lenguaje idéntico.

26. Que dicha sección 6.1 de los Acuerdos Operacionales dispone lo siguiente:

"Section 6: Transfer of Interests.

Section 6.1 General restrictions. Except as specifically provided in this Agreement, no Interest Holder at any time shall, voluntarily or involuntarily, sell, assign, transfer, make a gift or otherwise dispose of pledge, hypothecate, or encumber all or a part of their Ownership Participation, except if the transfer or the encumbrance is executed in strict compliance with the provisions of this Agreement.

The restrictions contain herein do not apply to transfers or conveyances by any of the Investors to:
a) Their respective spouses or children either by gift; inheritance, operation of law, or through trust agreements in which they could be presently or ultimately the beneficiaries; and
b) A corporate investor may validly transfer and/or convey its Ownership Participation, provided that the transferee is a legal entity in which the controlling interest is held by the investors or through a legal entity which owns the controlling interest of the investor or to the person that owns the controlling interest itself

27. Que la Sección 6.5 de los Acuerdos Operacionales establece lo siguiente:

"Section 6.5. Conditions for New Members. Notwithstanding anything else contained herein, no Person at any time shall be admitted as a Member of the Company unless: The Person delivers to the Company a written instrument agreeing to be bound by the terms of this Agreement, as it may have been amended from time to time; and the admission of such Person as a Member will not result in the termination of the Company."

28. Que el 30 de octubre de 2013, RUAÑO envió una notificación a las Codemandadas, y a Hato Rey Partners, respecto a su intención de transferir sus participaciones en dichas entidades a RULE, y que mediante el correo electrónico de esa fecha dirigido al Lcdo. Jacobo Ortiz Blanes. RUAÑO informó lo siguiente:

"Como parte de mi planificación le estoy informando que estaré transfiriendo mis participaciones en El Monte Town Center, LLC, El Monte Tower LLC Hato Rey Partners, LLC a Rule Caribbean Investment Trust. Lo anterior según permitido en el Investors Agreement otorgado el 8 de julio de 2013, página 2A General Restrictions, i) The restrictions contained herein do not

apply to transfer or conveyances by any of the Investors to a Trust Agreements...

Datos del Trust son los siguientes:

Nombre: RULE CARIBBEAN INVESTMENT TRUST- BIN: 66- XXXXXX Urban ACQUISITIONS CORP. Trustee.

Me dejas saber qué información necesitarías de mi parte para completar la transferencia de mis participaciones a ese Trust."

29. Que en respuesta a la notificación de RUAÑO previamente descrita, el Ledo. Jacobo Ortiz Blanes, como Secretario de EMTC y EMT, mediante un correo electrónico con fecha del 30 de octubre de 2013 dirigido a la Lcda. Mariana Ortiz Blanes, del cual se le envió copia a RUAÑO, refirió el asunto para evaluación legal al Bufete Ortiz Murias, Siaca y Ortiz Blanes, LLC, asesores legales de las Codemandadas.

30. Que con fecha del 5 de noviembre de 2013 RUAÑO envió un correo electrónico a la Leda. Mariana Ortiz Blanes, indicando lo siguiente:

"Mariana:

Según indique quiero transferir mis participaciones en El Monte Town Center, LLC, El Monte Tower, LLC y Halo Rey Partners, LLC a nombre del Trust. Incluyo copia de escritura del fideicomiso de Rule Caribbean Investment Trust y documento del IRS asignándole el número de identificación patronal.

La deuda subordinada permanecerá a mi nombre, solamente estoy transfiriendo las participaciones.

Me dejas saber si hace falta algo adicional."

31. Que con fecha de 12 de noviembre de 2013 RUAÑO dirigió un correo electrónico a la Lcda. Amanda Hernández del Bufete Ortiz Murias, Siaca y Ortiz Blanes, LLC acompañando copia del documento otorgando el traspaso de sus participaciones a RULE que se le solicitó.

32. Que cuando RUANO notificó a las Codemandadas, mediante su carta del 30 de octubre de 2013, su intención de transferir sus participaciones en EMTC y EMT a RULE, indicó en esa notificación que no estaba transfiriendo los Pagarés adeudados a él, y que sólo estaba transfiriendo sus participaciones en las corporaciones.

33. Que en su mensaje del 5 de noviembre de 2013 enviado mediante correo electrónico a la Lcda. Mariana Ortiz Blanes, RUAÑO confirma que quiere transferir sus participaciones en EMTC, EMT y HRP a nombre del Fideicomiso, e incluyó copia del fideicomiso de RULE Caribbean Investment Trust y del documento del IRS asignándole el número de identificación patronal.

34. Que en su mensaje del 12 de noviembre enviado por correo electrónico por RUAÑO a la Lcda. Amanda Hernández, RUAÑO le informa lo siguiente: "Adjunto le incluyo el documento otorgando el traspaso de mis participaciones al Trust". (refiriéndose al "Private Gift Agreement and Acceptance" firmado entre RUAÑO y RULE el 7 de noviembre de 2013).

35. Que, en respuesta a esa última comunicación, se le informó a RUAÑO que debía comunicarse con el Bufete Ortiz Murias, Siaca y Ortiz Blanes, LLC para proceder con el intercambio de los certificados emitidos a su nombre por nuevos certificados corporativos emitidos a favor de RULE.

36. Que en su mensaje del 13 de noviembre de 2013 enviado por Amanda L. Hernández Fernández a la Lcda. Mariana Ortiz Blanes, vía correo electrónico, la Lcda. Hernández Fernández le informa a la Lcda. Ortiz Blanes lo siguiente: "Ayer preparamos los certificados. El Sr. Ruaño pasará en la tarde de hoy."

37. Que un representante de las Codemandadas le entregó a RUAÑO el "Membership Certificate" No. 9 emitido el 12 de noviembre de 2013 por EMIT donde se certifica que RULE Caribbean Investment Trust es miembro de la "Limited Liability Company", con un interés equivalente al 30.5% por un Capital Contribution de $142,288, y que dicho Membership Certificate fue firmado por el Lcdo. Jacobo Ortiz Blanes como Secretario.

38. Que un representante de las Codemandadas le entregó a RUANO el "Membership Certificate" No. 9 emitido el 12 de noviembre de 2013 por EMTC donde se certifica que RULE Caribbean Investment Trust es miembro de la "Limited Liability Company", con un interés equivalente al 30.5% por un Capital Contribution de $98,878, y que dicho Membership Certificate fue firmado por el Lcdo. Jacobo Ortiz Blanes como Secretario.

39. Que los "Membership Certificates" emitidos a RULE por EMT y EMTC establecen (en la parte de atrás del Certificado) lo siguiente:

"Transfer Restricted

This certificate of participation is subject to the provisions of an Investors Agreement and to the terms and conditions of the LLC Operating Agreement, both dated July th, 2013. Copies of which, together with all amendments, are on file in the Company's principal offices. Any person who acquires in any manner the certificate of participation, irrespective of whether such person has accepted or adopted in writing the terms and provisions of both agreements, shall be deemed to have so accepted or adopted all of their terms and provisions and shall be bound by them

40. Que no es hasta el 19 de marzo de 2016 (aproximadamente dos años y cuatro meses después que se le emitieron los Certificados de Membresía a RULE) que los Codemandados, mediante correo electrónico y mediante correo certificado con acuse de recibo, le informan a RUANO (a través de su representante legal) lo siguiente:

a. Que el reclamo de RUAÑO se ha tomado académico ya que de conformidad con las disposiciones del Artículo 19.18(a)(d) de la Ley General de Corporaciones, Ley Número 164 del 16 de diciembre de 2009 y las Secciones 6.7 de los respectivos Acuerdos Operacionales de EMTC y EM7, dichos pagarés fueron debidamente capitalizados en los respectivos libros de las empresas emisoras.

b. Que dicha capitalización fue debidamente autorizada por los tenedores de más de un 69% de los intereses propietarios sobre cada una de las empresas emisoras, quienes autorizaron la conversión a capital de todos los pagarés originales identificados en los Exhibit A de los Acuerdos Operacionales.

c. Que, como resultado de lo anterior, los Exhibit A de cada uno de los Acuerdos Operacionales han sido enmendados para actualizar el monto total de la aportación de capital de cada uno de los miembros, dejando inalterado sus respectivos porcientos de participación, conforme requerido por las Secciones 6.7 de los respectivos acuerdos operacionales.

d. Que RUAÑO todavía continúa siendo miembro y/o inversionista de las compañías, toda vez que el procedimiento seguido por éste para notificar el traspaso de su participación a favor del fideicomiso no cumplió con el requisito dispuesto en las Secciones 6.5 de los Acuerdos Operacionales, específicamente que el fideicomiso tenía la obligación de enviar a las compañías una notificación por escrito obligándose a ceñirse a todos los términos y

condiciones que son objeto de los Acuerdos Operacionales.

e. Que dicha omisión por el fideicomiso, según disponen las Secciones 6.6 de cada uno de los Acuerdos Operacionales, convierte las transferencias ejecutadas en nulas ab initio.

f. Que le sugieren vuelva a notificar la transferencia verificada junto con la comunicación escrita del fidecomiso requerida por la Sección 6.5 de modo que los correspondientes certificados de participación o interés propietario puedan ser re-emitidos a nombre del fideicomiso con fecha posterior a dichas comunicaciones.

g. Que es necesario se les devuelvan los dos pagarés, así como los certificados originales a nombre del fideicomiso, los cuales evidentemente fueron emitidos prematuramente por las razones antes expuestas.

41. Que el documento titulado "Written Consent of the Members in Lieu of a Meeting" de EMTC firmado por algunos de los miembros en octubre del 2015 en el cual se autoriza a la Junta de Directores a entrar en negociaciones para obtener facilidades de crédito que no excedan los $10,000,000, se incluye a RULE (y no a RUAÑO) como uno de los Miembros.

42. Que en el documento titulado "Written Consent of the Members in Lieu of a Meeting de EMT firmado por algunos de los miembros en octubre de 2015 en el cual facilidades de crédito la Junta de Directores a entrar en negociaciones para obtener Meeting" de EMT firmado por algunos de los miembros en octubre del 2015 en facilidades de crédito que no excedan los $10,000,000, se incluye a RULE (y no a RUAÑO) como uno de los Miembros.

43. Que la transacción de intercambio de Certificados de Participaciones tuvo lugar en las oficinas de las corporaciones el 13 de noviembre de 2013 donde, según acordado, RUAÑO entregó a la Lcda. Amanda Hernández los certificados de miembro con interés de EMTC, EMT y de HRP, inicialmente emitidos a su nombre, para su cancelación, y recibió a cambio tres nuevos certificados de membresía en cada una de las corporaciones emitidos a nombre de RULE.

44. Que cada uno de los nuevos certificados de membresía emitidos a nombre de RULE lee como sigue:

This Certificates that Rule Caribbean Investment Trust is a member of the above- named Limited Liability Company, and holds a 30.5% interest of the above-

named Company, which is entitled to the full benefits of such membership. Such benefits are subject to the membership duties, obligations and restrictions set forth in the Limited Liability Company Operating Agreement. (Énfasis provisto por el Comisionado Especial)

In Witness Whereof, the said Company has caused this Certificate to be signed by its duly authorized officers this 12 day of November 2013 A.D.
[signed]

Jacobo Ortiz Blanes
Secretary

45. Que al dorso de cada uno de los nuevos Certificados de Participación emitidos a nombre de RULE se indica lo siguiente:

Transfer Restricted

This certificate of participation is subject to the provisions of an Investors' Agreement and the terms and conditions of the LLC Operating Agreement both dated July 8th, 2013. Copies of which, together all amendment, are on file in the Company's principal offices. Any person who acquires in any manner the certificate of participation, irrespective of whether such person has accepted or adopted in writing the terms and provisions of both agreements, shall be deemed to have accepted or adopted all of their terms and provisions and shall be bound by them.

46. Que mediante las transacciones previamente descritas RULE advino a ser el nuevo miembro inversionista de las codemandadas EMTC y EMT, así como también de HRP (el 13 de noviembre de 2013).

47. Que a la fecha de la referida transferencia de las participaciones (13 de noviembre de 2013) los tres miembros de la Junta de Directores de EMTC y de EMT eran Jacobo Ortiz Murias, Jacobo Ortiz Blanes y Juan C. Ruaño Muñoz.

48. Que RUANO no transfirió a RULE los Pagarés adeudados a él por las corporaciones, ni se le requirió la entrega o cancelación de los mismos, manteniéndose personalmente RUAÑO como acreedor de EMT y EMTC.

49. Que por los propios términos de los Pagarés a favor de RUAÑO, los mismos no eran transferibles.

50. Que el 9 de octubre de 2015 (dos años después que se le emitieran los Certificados a RULE), las corporaciones le solicitaron a RUANO suscribir un nuevo acuerdo de subordinación de sus acreencias con las empresas demandadas con BANESCO, en relación a un refinanciamiento de la deuda original con BANESCO y una deuda aumentada a $10,000,000.

51. Que RUAÑO objetó suscribir dicha nueva subordinación, por lo que el préstamo se procesó sin que RUAÑO subordinara sus acreencias con las empresas Codemandadas.

52. Que el 10 de febrero de 2016 RUANO le requirió a las compañías Codemandadas el pago de las deudas evidenciadas por los Pagarés, las cuales según los propios términos de los Pagarés debían comenzar a pagarse el 1ro de enero de 2016.

53. Que el 3 de marzo de 2016, las corporaciones EMT y EMTC, se negaron al pago de las acreencias de RUAÑO y le informaron que las compañías no tenían la capacidad económica para satisfacer dichas deudas.

54. Que el 8 de marzo de 2016 RUAÑO solicitó que se cumpliera con el pago de su deuda, e informó que de no recibir el pago de los intereses vencidos a ese momento estaría acelerando la deuda y declarando la misma líquida, vencida y exigible a tenor con los acuerdos estipulados en los Pagarés.

55. Que previamente RUAÑO había reclamado a EMTC y a EMT el pago de otros Pagarés por cantidades menores, y los mismos le habían sido pagados por EMTC y EMT.

56. Que el 19 de marzo de 2016 (por primera vez, y luego de dos años y cuatro meses después que se le emitieran los Certificados de Membresía a RULE) el Lcdo. Jacobo Ortiz Murias le envió una comunicación al Lcdo. Oscar Padilla López (representante legal de RUAÑO) en la que se informa que la transferencia de las acciones por RUANO al fideicomiso RULE, era nula, por no haberse cumplido con la sección 6.5 de los Acuerdos Operacionales.

57. Que en su carta del 19 de marzo de 2016 el Lcdo. Jacobo Ortiz Murias le informó a RUAÑO que mediante la resolución del 69% de los miembros con interés de EMTC y EMT, se estaban capitalizando las deudas de las corporaciones con RUANO, por lo que su reclamo para el pago de los Pagarés era académico.

58. Que en su carta del 20 de diciembre del 2016 el Lcdo. Jacobo Ortiz Blanes, en su capacidad de Presidente de Hato Rey Partners LLC le informó a RUAÑO lo siguiente:

"Por instrucciones de la Junta de Directores de Hato Rey Partners LLC. incluyo cheque #4417 por $13.612.99, que corresponde a la participación de Rule Caribbean Investment Trust (RCIT) como miembro de Hato Rey Partners LLC en los beneficios acumulados para el periodo comprendido el 2016, según aprobado por la Junta de Directores en la reunión de la Junta del 10 de noviembre del 2016.

En vista de la transferencia de la participación en la Compañía que le pertenecía originalmente a Juan Ruaño Muñoz a favor de RCIT, el recibo y aceptación por parte de RCIT de pago aquí enviado, será considerado como la aceptación incondicional de RCIT, como sucesor en derecho de Juan Ruaño Muñoz de todos los términos y condiciones del Acuerdo Operacional de la Compañía suscrito entre sus miembros el 16 de julio de 2013.

59. Que durante dos años y cuatro meses las corporaciones reconocieron a RULE como su nuevo accionista (miembro) en sustitución de RUAÑO.

60. Que la sección 6.1 de los Acuerdos Operacionales, exceptúan de las restricciones las transferencias de acciones a fideicomisos en los cuales los hijos o cónyuge del inversionista es el beneficiario, lo cual es el caso ante nuestra consideración.

61. Que el lenguaje expresamente incorporado en el dorso de los certificados emitidos a favor de RULE claramente establece la sujeción por parte de RULE a los Investors' Agreements, por lo que no era requerido un documento adicional para asegurar el cumplimiento de RULE con los Investors' Agreements.

62. Que Hato Rey Partners LLC (la otra corporación del grupo) confirmó haber validado y aceptado (sin objeción) la transferencia efectuada por RUANO de sus participaciones a favor de RULE, y no alegó que no se cumplía con el artículo 6.5 de los Acuerdos Operacionales.

63. Que en el caso de disposiciones legales idénticas, en Hato Rey Partners LLC se tuvo por suficiente y bien hecha la transferencia de las participaciones de RUAÑO a RULE, mientras que en EMTC y EMT (asumiendo una posición contradictoria), bajo las mismas condiciones, decidieron decretar nulos e inválidos los certificados de membresía emitidos por las corporaciones a favor de

RULE sobre las participaciones originalmente adquiridas por RUAÑO.

64. Que el 19 de marzo de 2016 las Codemandadas EMTC y EMT declararon nula (nula ab initio) la transferencia de las acciones de membresía a RULE (la cual había sido previamente autorizada), y se decretó que las acciones emitidas a RULE revertían a nombre de RUANO como el accionista de EMTC y de EMT.

65. Que la transferencia de las acciones a RULE por parte de RUANO se anuló por parte de las Codemandadas retroactivamente (luego de dos años y cuatro meses de la transferencia de las acciones), y que también se declaró que las deudas de las corporaciones con sus accionistas evidenciadas por los Pagarés emitidos serian capitalizadas.

66. Que la porción ya vencida de los Pagarés emitidos por EMTC y EMT a favor de RUAÑO ha acumulado intereses desde el 1 de enero de 2016 hasta el presente, y que dichos Pagarés contienen una cláusula penal que impone un 10% del principal de la obligación para gastos, costas y honorarios de Abogado.

En vista de las determinaciones de hechos formuladas, el Comisionado Especial realizó las siguientes conclusiones de derecho:

1. Que los Pagarés emitidos por las Corporaciones no eran negociables ni transferibles.

2. Que RUAÑO no transfirió a RULE sus acreencias representadas por dichos Pagarés.

3. Que habiendo previamente concluido que la transferencia de sus Certificados de Membresía por parte de RUANO al Fideicomiso es válida y no es "nula *ab initio*" como alegan las Codemandadas, también se concluye que a la fecha en que se autorizó y se llevó a cabo la "capitalización" de los Pagarés era el Fideicomiso RULE, y no RUAÑO (como alegan las Codemandadas), el propietario de los Certificados de Membresía (y era el accionista de las Corporaciones) desde el 13 de noviembre de 2013, por lo que no procedía la "capitalización" (conversión de la deuda a acciones) ya que el acreedor de dichos Pagarés (RUANO) no era accionista de las Corporaciones.

4. Que es nula la "capitalización" de la deuda de las Corporaciones con RUAÑO, ya que éste dejó de ser "Miembro" o accionista de las Corporaciones desde la fecha en que transfirió válidamente sus Certificados de Membresía o acciones a RULE, lo que ocurrió mucho antes de la "capitalización" de la deuda.

RESPECTO A SI LOS PAGARÉS ADEUDADOS A RUAÑO SON LÍQUIDOS Y EXIGIBLES:

Debido a que no se recibió información clara y precisa sobre cuántas son las mensualidades atrasadas (principal vencido y no pagado), ni información clara sobre cuánto es el interés adeudado, la controversia relacionada con esos asuntos no puede ser resuelta mediante la vía sumaria.

En desacuerdo, el 9 de abril de 2024, la parte apelante presentó su *Objeción a "Resolución del Comisionado Especial sobre Solicitud de Sentencia Sumaria Parcial" y Solicitud de Devolución para Realizar Determinaciones de Hechos Adicionales.*[10] Planteó, que existían incongruencias en las determinaciones de hechos con relación a la transferencia del interés propietario del señor Ruñao Muñoz a favor de Rule Caribbean. Sostuvo que la cantidad de inversión reconocida a las Compañías eran de $241,266.00 conforme al *Acuerdo Operacional* y no $241,288.00 según la determinación de hechos núm. 7. A su vez, indicó que los pagarés objeto de la *Demanda* fueron debidamente convertidos a capital conforme a los *Acuerdos Operacionales* y, por consiguiente, dejaron de ser una deuda o pasivo de las compañías a favor del señor Ruaño Muñoz.

Por todo lo anterior, razonó que existía controversia de hechos y que procedía corregir la determinación de hechos núm. 7. A su vez, presentó las siguientes determinaciones de hechos adicionales:

Que, como resultado de la transferencia de membresía de Ruaño a RULE, la inversión total de capital de RULE es equivalente a $142,28.00 en la Compañía EMT y de $98,878.00 en la Compañía BMTC, ya que Ruaño no transfirió los Pagarés emitidos por las Compañías a su favor.

Que, en conformidad con lo estipulado en la Sección 2.2 de los Acuerdos Operacionales y el "Exhibit A: Schedule I", el porciento de interés propietario que RULE adquirió en cada una de las Compañías como resultado de la transferencia de membresía de Ruaño debe calcularse en proporción a su inversión total de capital en cada Compañía y, en consecuencia, se reduce a 15.24% en

---

[10] Íd., págs. 48-64.

cada Compañía y así debe reflejarse en los Certificados de Participación y en los libros de las Compañías.

Posteriormente, el 30 de mayo de 2024, la parte apelante presentó su *Réplica a Moción del Comisionado Especial en Cumplimiento de Orden sobre Resolución Disponiendo de Solicitud de Sentencia Sumaria Parcial.*[11] En esencia, argumentó que existía incongruencias con relación al cómputo del interés propietario a favor de Rule Caribbean, las determinaciones de hechos y las conclusiones de derecho que formuló el Comisionado Especial. Particularmente, alegó que existía controversias de hechos respecto a la determinación de hechos número 37 y 38. De igual forma, esbozó que el Comisionado Especial estaba obligado a suscribirse a lo pactado en los *Acuerdos Operacionales*, el cual determinaba la participación de cada miembro en proporción a su inversión. En específico, apuntó que el señor Ruaño Muñoz no podía burlar las restricciones y exigencias aplicables de la sección 6.5 y, pretender que Rule Caribbean fuera admitido como miembro de las compañías sin sujeción a condición alguna.

De otra parte, esbozó que la restricción de transferencia de los certificados no fue firmada, por lo que la mera inclusión de la cláusula de restricción sin firma correspondiente no podía satisfacer la condición establecida en la sección 6.5 de los *Acuerdos Operacionales*. Por último, enfatizó que el señor Ruaño Muñoz admitió nunca satisfizo la condición establecida en los *Acuerdos Operacionales* para que Rule Caribbean fuera admitido como miembro de las compañías, por lo que los certificados de membresía a nombre de Rule Caribean eran nulos *ab initio*. En virtud de lo anterior, razonó que existían controversias de hechos que impedían resolver la controversia por la vía sumaria.

---

[11] Íd., págs. 28-44.

Luego de examinar los argumentos presentados por las partes, el 21 de junio de 2024, el TPI emitió una *Sentencia Parcial* en la cual acogió la *Resolución del Comisionado Especial* que se emitió el 15 de marzo de 2024.[12] Así pues, adoptó las determinaciones de hechos y las conclusiones de derecho haciéndolas formar parte de la *Sentencia Parcial.*

Inconforme, el 8 de julio de 2024, la parte apelante presentó su *Solicitud de Reconsideración de Sentencia Parcial* en la cual reiteró sus planteamientos iniciales.[13] En esencia, adujo que las determinaciones de hechos no estaban sustentadas en los documentos del expediente y, que existían controversias sobre elementos subjetivos, de intención y credibilidad en el caso. Además, esgrimió que el apelado actuó de mala fe y en contra de sus propios actos. Sostuvo que el señor Ruaño Muñoz aceptó los términos y condiciones de los *Acuerdos Operacionales* y, reconoció que todos los socios debían ceñirse a las condiciones esbozadas en dicho acuerdo. Enfatizó que, era necesaria la firma del cesionario para la validez del certificado de participación. Por último, planteó que en los pagarés no se dispuso pacto expreso respecto a la aceleración del pago de la totalidad de la deuda, por lo que no procedía dicha aceleración.

La parte apelante acompañó la solicitud de reconsideración con una *Declaración Jurada* que suscribió el Sr. Jacobo Ortiz Blanes, socio de El Monte, el 8 de julio de 2024. Mediante dicha Declaración Jurada expuso que, el 8 de julio de 2013 las parte otorgaron los Acuerdos Operacionales y los Acuerdos de Inversiones de el Monte Tower Center LLC y el Monte Tower LLC. En lo pertinente, declaró lo siguiente: (1) en el caso de realizar una transferencia de interés en las compañías, independientemente de

---

[12] Íd., págs. 26-27.
[13] Íd., págs. 12-25.

quién fuese el cesionario, acordamos y aceptamos que tal cesionario solo podría ser admitido como miembro de las compañías si entregaba un instrumento escrito aceptando quedar obligado por los términos de los Acuerdos Operacionales; (2) todos los miembros de las compañías aceptamos que las condiciones restrictivas establecidas en los Acuerdos Operacionales son razonables bajo el propósito de las compañías y en función de la relación de sus miembros. A tales efectos, establecimos que incumplir con todas las provisiones de los Acuerdos Operacionales haría que la transferencia fuese considerada nula e inválida, sin efecto legal alguno; (3) en ningún momento se acordó ni se ha acordado conceder el derecho alguno a la aceleración del repago de la deuda; (4) por error e inadvertencia, el 13 de noviembre de 2013 se otorgaron nuevos certificados de membresía a favor de RULE, sin que se hubiesen completado los trámites necesarios para la transferencia de interés según surge de los Acuerdos Operacionales; (5) Dicho error de emisión de certificados de membresía fue notificado al Sr. Ruaño Muñoz el pasado 10 de marzo de 2016, donde se le explicó que la transferencia a favor de RULE no cumplió con los requisitos de los Acueductos Operacionales, por lo que la misma fue nula desde su inicio.

Por su parte, el 10 de julio de 2024, el apelado y Rule Caribbean presentaron su *Oposición a Solicitud de Reconsideración de Sentencia Parcial*.[14] Alegaron, que la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, no permitía reabrir la adjudicación de una solicitud de sentencia sumaria cuando se presentaba nueva prueba. Asimismo, enfatizó que, presentar la declaración jurada era improcedente y de mala fe, toda vez que los *Acuerdos Operacionales* de la empresa eran claros y libre de ambigüedades. A su vez,

---

[14] Íd., págs. 3-11.

esbozaron que la declaración jurada se presentó luego de adjudicarse la solicitud de sentencia sumaria, por lo que esta tardía e insuficiente para oponerse a la solicitud de sentencia sumaria. Por último, señaló que la parte apelante solicitó una vista evidenciaría para presentar nueva prueba, esto sin haber solicitado dicha vista de forma oportuna ante el TPI o ante el Comisionado Especial.

El 17 de julio de 2024, el TPI emitió una *Orden* que se notificó el 19 de julio de 2024, en la cual determinó lo siguiente:

> Evaluada la Solicitud de Reconsideración de Sentencia Parcial y la Oposición a Solicitud de Reconsideración, se declara No Ha Lugar.[15]

Inconforme aún, el 19 de agosto de 2024, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el TPI al dictar sentencia sumaria parcial a pesar de que la solicitud de sentencia sumaria presentada por los apelados no cumplió con todos los requisitos esbozados en la Regla 36 de Procedimiento Civil.**
>
> **Erró el TPI al dictar sentencia sumaria parcial en contravención con la doctrina esbozada en SLG Zapata-Rivera v. J.F. Montalvo, Infra, y su progenie.**
>
> **Erró el TPI al dictar sentencia por la vía sumaria a pesar de existir hechos esenciales en controversia.**
>
> **Erró el TPI al dictar sentencia por la vía sumaria, a pesar de que, en estricto derecho, los apelados no tienen un remedio a su favor.**

Atendido el recurso, el 22 de agosto de 2024, emitimos una *Resolución* concediéndole al apelado hasta el 10 de septiembre de 2024, para presentar su alegato en oposición. Oportunamente, el 9 de septiembre de 2024, el señor Ruaño Muñoz y Rule Caribbean presentaron su *Alegato en Oposición a Apelación* y negaron que el TPI cometiera los errores que el apelante le imputó. Posteriormente, el 23 de septiembre de 2024, emitimos una *Resolución* a la Hon. Glorianne M. Lotti Rodríguez, juez del Tribunal de Primera

---

[15] Íd., págs. 1-2.

Instancia, Sala Superior de San Juan, para que conforme a la Regla 83.1 del Reglamento del Tribunal de Apelaciones y en el término de cinco (5) días, fundamentara su *Sentencia* emitida el 21 de junio de 2024, a los fines de determinar bajo qué reclamación de la *Demanda* dictó *Sentencia Sumaria Parcial* y final. Conforme ordenado, el 30 de octubre de 2024 la Juez Glorianne Lotti Rodríguez presentó su Comparecencia Especial en cuanto al cumplimiento con lo ordenado por este Tribunal.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se

opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra, pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho.

Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

III.

En el presente caso, la parte apelante impugnó una *Sentencia Parcial* que dictó el TPI el 21 de junio de 2024 y notificó el 24 de junio de 2024. Mediante el aludido dictamen, el TPI acogió la *Resolución del Comisionado Especial.* Específicamente en su primer señalamiento de error, las Compañías plantearon que el TPI erró al dictar sentencia sumaria parcial a pesar de que dicha solicitud no cumplió con todos los requisitos de la Regla 36 de Procedimiento Civil, *supra.* Por otra parte, en su segundo señalamiento de error, argumentaron que el TPI erró al dictar sentencia sumaria parcial en contravención a la doctrina esbozada en SLG Zapata-Rivera v. J.F. Montalvo, *supra*, y su progenie. En su tercer señalamiento de error, arguyeron que el TPI erró al dictar sentencia sumaria por la vía sumaria a pesar de existir hechos esenciales en controversia. Por último, en su cuarto señalamiento de error esbozaron que el TPI erró

al dictar sentencia por la vía sumaria, a pesar de que, en estricto derecho, los apelados no tenían un remedio a su favor.

Por estar estrechamente relacionados entre sí, discutiremos el primer y segundo señalamiento de error en conjunto. Cabe precisar que, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Así pues, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo, supra.* Al evaluar los escritos presentados por las partes resolvemos que, en esencia, ambas cumplieron con los referidos requisitos. Es decir, el señor Ruaño Muñoz y el fideicomiso Rule Caribbean presentaron un listado en párrafos enumerados de los hechos que considera no estaban en controversia y especificó la página o párrafo de la prueba en que se apoyaba. De igual forma, la parte apelante presentó la cita de los párrafos que entendió estaban en controversia y para cada uno detalló la prueba que lo sustentaba. Por lo anterior, resolvemos que el primer y segundo señalamiento de error no se cometieron. Resuelto lo anterior, nos corresponde evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria. *Veamos.*

En su dictamen el Comisionado Especial realizó sesenta y seis (66) determinaciones de hechos que no estaban en controversia las cuales procederemos a resumir y a adoptar en su totalidad. El señor Ruaño Muñoz formó parte del grupo de inversionistas que participó de la adquisición de las Compañías. Posteriormente, el 8 de julio de 2013, se otorgaron los *Acuerdos Operacionales* de las Compañías y se establecieron las participaciones de cada inversionista. A su vez, se estableció quiénes iban a constituir la Junta de Directores, entre estos, el apelado. En específico, la

participación del señor Ruaño Muñoz en cada una de las Compañías correspondía a un 30.5%. Este porciento era el resultado de la inversión de capital de $241,288.00 en la compañía EMTC y de $347,044.00 en la compañía EMT.

De otra parte, los inversionistas, como parte de sus aportaciones iniciales a las Compañías, además del capital aportado, les entregaron ciertas cantidades de dinero en calidad de préstamos, las cuales fueron evidenciadas mediante la emisión de los correspondientes pagarés a favor de los miembros. En el caso del apelado, el 8 de julio de 2013, se emitieron dos pagarés por la cantidad de $204,756.00 con fecha de vencimiento el 1 de enero de 2041 y otro pagaré por la cantidad de $142,288.00 con fecha de vencimiento el 1 de enero de 2041, correspondientes a las deudas de estas Compañías con Ruaño Muñoz, por concepto de los préstamos hechos por éste a las Compañías. Según acordado en los pagarés, las Compañías se obligaron a que a partir del 1ro de enero de 2016, comenzarían a pagar las sumas adeudadas mediante 300 plazos mensuales iguales y consecutivos de principal e intereses a razón de 8% anual. Particularmente, el pagaré establecía que, en caso de incumplimiento con la obligación antes señalada respecto a cada uno de los pagarés emitidos, éstas se comprometían a pagar al acreedor una suma equivalente al 10% del principal de la obligación para gastos, costas y honorarios de abogado en caso de reclamación por la vía judicial y, cuya suma sería líquida y exigible con la presentación de la Demanda.

Así pues, vencidos los pagarés, el apelado solicitó a las partes el pago de estos. No obstante, las Compañías se negaron a pagar las acreencias establecidas en los pagarés y, arguyeron que el 69.5% de los inversionistas de las Compañías habían acordado convertir en capital los préstamos que cada uno de los inversionistas. Por su parte, el apelado adujo que era su interés transferir sus inversiones

en las Compañías al fideicomiso Rule Caribbean, en el cual los beneficiarios eran el apelado y sus hijos. Ello como parte de un proceso de planificación contributiva y hereditaria. Sostuvo que dicha transferencia era permitida al amparo del artículo 6.1 de los *Acuerdos Operacionales*, así como de la Sección A del *Investors Agreement*. En específico, la Sección 6.1 *Transfer of Interests* y la Sección 6.5 *Conditions for New Members* del del *Acuerdo Operacional* dispone lo siguiente:

> Section 6.1 General restrictions. Except as specifically provided in this Agreement, no Interest Holder at any time shall, voluntarily or involuntarily, sell, assign, transfer, make a gift or otherwise dispose of pledge, hypothecate, or encumber all or a part of their Ownership Participation, except if the transfer or the encumbrance is executed in strict compliance with the provisions of this Agreement.
>
> The restrictions contain herein do not apply to transfers or conveyances by any of the Investors to:
> a) Their respective spouses or children either by gift; inheritance, operation of law, or through trust agreements in which they could be presently or ultimately the beneficiaries; and
> b) A corporate investor may validly transfer and/or convey its Ownership Participation, provided that the transferee is a legal entity in which the controlling interest is held by the investors or through a legal entity which owns the controlling interest of the investor or to the person that owns the controlling interest itself
>
> [...]
>
> "Section 6.5. Conditions for New Members. Notwithstanding anything else contained herein, no Person at any time shall be admitted as a Member of the Company unless: The Person delivers to the Company a written instrument agreeing to be bound by the terms of this Agreement, as it may have been amended from time to time; and the admission of such Person as a Member will not result in the termination of the Company."

Particularmente, el 5 de noviembre de 2013, el señor Ruaño Muñoz envió un correo electrónico a la representación legal de la parte apelante en la cual indicó que quería transferir sus participaciones a nombre del fideicomiso Rule Caribbean. Asimismo,

aclaró que la deuda permanecería a su nombre y que, únicamente transfería sus participaciones. Consecuentemente, el 12 de noviembre de 2013, el apelado notificó y adjuntó copia del documento en el cual realizó el traspaso de sus participaciones. Así pues, el 12 de noviembre de 2013, se emitió un *Membership Certificate* en el cual se certificó que Rule Caribbean era miembro de las Compañías con un interés equivalente al 30.5%.

Luego de revisar la totalidad del expediente, examinado los argumentos de ambas partes y aquilatada la prueba documental que obra en el expediente, concluimos que no existe hechos sustanciales en controversia que nos impida dictar sentencia sumaria parcial. Por tal motivo, solo resta determinar si los pagarés del apelado por las cantidades de $204,756.00 y $142,288.00 son deudas líquidas, vencidas y exigibles de las Compañías. *Veamos.*

Por estar estrechamente relacionados entre sí, discutiremos el tercer y cuarto señalamiento de error en conjunto. Según la sección 6.1 de los *Acuerdos Operacionales*, se exceptúan de las restricciones de transferir las acciones a fideicomisos en los cuales los hijos o cónyuges del inversionista fueran los beneficiarios. Surge del expediente ante nuestra consideración, que el señor Ruaño Muñoz notificó a la parte apelante que deseaba transferir sus acciones al fideicomiso Rule Caribbean. Dicho fideicomiso se creó con fines hereditarios para los hijos y esposa del apelado. Por ello, determinamos que la transferencia de las acciones estaba cobijada bajo las excepciones de la sección 6.1 de los *Acuerdos Operacionales*. Por otra parte, el lenguaje incorporado en el dorso de los certificados de membresía emitidos a favor de Rule Caribbbean establecían la sujeción por parte del fideicomiso a los *Investors Agreements*, por lo que no era requerido un documento adicional para asegurar el cumplimiento de Rule Caribbean.

Nótese, además, que previo a reclamar los pagarés del caso de epígrafe, el señor Ruaño Muñoz había reclamado otros pagarés a las Compañías y estos habían sido pagados. A su vez, es necesario señalar que no es hasta el 19 de marzo de 2016, que la parte apelante informó que las transferencias de las acciones a Rule Caribbean eran nulas. Es decir, dos años y cuatro meses después que se le emitieran los certificados de membresía al fideicomiso Rule Caribbean. Ello, como subterfugio para no pagar la acreencia al apelado. Cónsono con lo anterior, resulta forzoso concluir que las Compañías reconocieron a Rule Caribbean como su nuevo accionista durante dos años y cuatro meses y, nunca cuestionaron la validez de la cesión de las acciones. Consecuentemente, Rule Caribbean era accionista desde el momento en que se realizó la transferencia de las inversiones, es decir, el 13 de noviembre de 2013.

Ahora bien, cabe precisar que ambos pagarés eran claros al disponer que no eran negociables ni transferibles y que vencían el 1 de enero de 2016. De igual forma, el 5 de noviembre de 2013, el apelado emitió un correo electrónico a la representación legal de la parte apelante en la cual indicó que deseaba transferir sus aportaciones al fideicomiso Rule Caribbean. Sin embargo, enfatizó que la deuda permanecería a su nombre. Entiéndase, los pagarés no fueron transferidos. Así pues, es forzoso concluir que los pagarés y las transferencias de las acciones eran dos (2) asuntos distintos y separados, por lo que era la intención del señor Ruaño Muñoz transferir únicamente sus acciones. No obstante, no transfirió los pagarés y así consta en dicho acuerdo.

Por tanto, colegimos que el apelado no transfirió a Rule Caribbean los pagarés adeudados por las Compañías, ni se le requirió la entrega o cancelación de estos, manteniéndose como acreedor. Por ello, entendemos que el TPI no erró al determinar que

el señor Ruaño Muñoz era el tenedor de los pagarés, por lo que era válido su reclamo respecto a dichos pagos y tenía derecho a un remedio a su favor.

En cuanto a la capitalización de la deuda, determinamos que a la fecha en que se llevó a cabo la capitalización de los pagarés, era el fideicomiso Rule Caribbean y no el señor Ruaño Muñoz el propietario de los certificados de membresía y accionista de las Compañías desde el 13 de noviembre de 2013, por lo que no procedía la capitalización de la deuda, toda vez que el apelado no era accionista de las Compañías en el momento en que se realizó la capitalización de la deuda. Por tanto, colegimos que era nula la capitalización de la deuda que se realizó con el señor Ruaño Muñoz, ya que este dejó de ser accionista de las Compañías desde la fecha en que se transfirieron sus acciones a Rule Caribbean. Ello, ocurrió previo a la capitalización de la deuda.

Por último, resolvemos que ni el apelado ni la parte apelante presentaron documentos o prueba para demostrar si la deuda que reclamaba el señor Ruaño Muñoz era líquida y exigible. Consecuentemente, determinamos que ninguno de los errores imputados se cometió y que el TPI correctamente dictó sentencia sumaria parcial.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones